UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMES H. CLARK, )
 )
    Plaintiff, )
 )
vs. ) Case No. 4:05CV1299SNL
 )
ST. LOUIS PUBLIC SCHOOLS, ET. AL., )
 )
    Defendants. )

## MEMORANDUM

*Pro se* plaintiff has filed this disability employment discrimination action (ADA) alleging that he was denied an accommodation, a promotion, and was subjected to a hostile work environment on the basis of his purported disability.[1] This matter is before the Court on defendant St. Louis Public Schools' (SLPS) motion to dismiss (#50), filed December 21, 2005 and plaintiff's motion for summary judgement **[sic]** (#53), filed January 13, 2006. It appears that plaintiff's summary judgment motion is his response to the SLPS's motion to dismiss.[2] As of today's date, SLPS has not filed a response to plaintiff's summary judgment motion.

Plaintiff's summary judgment motion and memorandum in support is nothing more than a narrative of what he considers to be "uncontroversial material facts" accompanied by "exhibits" which appear to be a collection of copies of correspondence and other documents with his handwritten notes on them. Firstly, the motion, memorandum in support, and "exhibits" far exceed the fifteen-page rule and plaintiff did not seek leave to file his motion as being in excess of fifteen (15) pages. On this ground alone, the motion can be denied. Secondly, the memorandum in support totally fails to provide any authoritative caselaw regarding disability discrimination; and the "uncontroversial material facts" are not statements of facts but rather personal opinion

---

[1] Plaintiff's purported disability is Attention Deficit Disorder.

[2] On December 23, 2005 plaintiff sought an extension of time of an additional ten (10) days to respond to SLPS' motion to dismiss. *See*, Document 52. On December 29, 2005 this Court granted the extension of time which would require the filing of plaintiff's responsive pleading on or before January 13, 2006. *See,* Docket Text Order of December 29, 2005. Since the only filing by plaintiff on January 13, 2006 is the instant summary judgment motion, the Court assumes that plaintiff intended it to be his responsive pleading.

statements, legal conclusions, and speculations. For example, in ¶9[3] plaintiff states: "The requested accommodations would have NO Undue Hardship upon the SLPS." This is nothing more than plaintiff's opinion. He continually "interprets" his attached correspondence; e.g. ¶10(a) and (b). In ¶19, plaintiff states: "As recognized in the Plaintiff's letter dated February 7, 2005, along with other correspondences, the Plaintiff requested an official 2004-05 Summative Evaluation. Every other teacher acquired one, but the Plaintiff did not. According to state (DESE) and federal laws, non-tenured teachers are supposed to acquire yearly Summative Evaluations." Not only is this his "legal opinion", but plaintiff fails to cite a single state or federal law to support this opinion. Plaintiff's "uncontroversial material facts" is an impermissible narrative of how plaintiff believes he has been wronged. When reviewing a summary judgment motion, a court can only consider admissible evidence. *See*, Henthorn v. Capitol Communications, Inc., 359 F.3d. 1021, 1026 (8th Cir. 2004)(internal citations omitted). Furthermore, reliance on the allegations made in pleadings is insufficient to raise a genuine issue of material fact. *See*, Green v. St. Louis Housing Authority, 911 F.2d. 65, 68 (8th Cir. 1990).

Plaintiff's summary judgment motion fails to properly raise any genuine issue of fact and fails to cite any legal authority showing that as a matter of law he is entitled to judgment. Thus, his summary judgment motion will be denied.

As the summary judgment motion constituted plaintiff's response to the defendant's motion for summary judgment, technically, plaintiff is left without a responsive pleading. However, due to plaintiff's *pro se* status, the Court will extend some leeway, and in addressing the issues raised in the defendant's motion to dismiss, will consider any salient points raised by plaintiff in his summary judgment motion.

In passing on a motion to dismiss, a court must view the facts alleged in the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974); Conley v. Gibson, 355 U.S. 41, 45-46(1957); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir. 1986). The court must accept the allegations in the complaint as true and draw reasonable inferences in favor of the nonmoving

---

[3]References to examples are from plaintiff's memorandum in support of motion for summary judgment (#54).

party, dismissing the complaint only if "it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, *supra*, 355 U.S. at 45-46; *see also*, Moses.com Securities v. Comprehensive Software Systems, Inc., 406 F.3d. 1052, 1062 (8th Cir. 2005). "Although the pleading standard is liberal, the plaintiff must allege facts -- not mere legal conclusions -- that, if true, would support the existence of the claimed torts. Moses.com, at 1062 *citing* Schaller Tel.Co. v. Golden Sky Sys., 298 F.3d. 736, 740 (8th Cir. 2002). In viewing the complaint in the light most favorable to the plaintiff, the court should not dismiss it merely because the court doubts that the plaintiff will be able to prove all of the necessary allegations. Bennett v. Berg, 685 F.2d. 1053, 1058 (8th Cir. 1982). Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982). With this standard in mind, this Court turns to an examination of the plaintiff's complaint.

Plaintiff purports to state a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. §12111, *et. seq.* He alleges that he has Attention Deficit Disorder. (Complaint, ¶10). Plaintiff alleges that he was hired by defendant SLPS in the Fall 2003 and assigned to Roosevelt High School as a special education resource teacher; a position he held throughout the 2003-04 school year. (Complaint, ¶¶4, 11(E)). He was assigned to work with an algebra teacher and a physical science teacher. (Complaint, ¶11(E)). He was able to perform his duties during the 2003-04 school year. (Complaint ¶11(E)(1)).

Plaintiff alleges that he engaged in several communications with SLPS administrators in which he expressed his desire to by employed by SLPS not as a special education resource teacher but as a "disciplinarian"[4]. (Complaint, ¶¶11(F)). However, plaintiff alleges that in September 2004 he learned that, for the 2004-05 school year, he was going to remain assigned as a special education resource teacher at Roosevelt High School and would be teaching two (2) physical education classes

---

[4]It is not made clear in plaintiff's complaint exactly what the position of "disciplinarian" encompasses. According to his allegations, plaintiff's previous employment with the Special School District was as a crisis intervention teacher. He further alleges that as a result of his years with the Special School District, he developed certain "disciplinary concepts" which he asserts should be utilized within the SLPS.

3

and two (2) self-contained special education physical science classes. (Complaint, ¶11(G)(a)(a-b)). Although plaintiff had no prior physical education teaching experience, he managed to overcome certain teaching limitations, and "eventually learned, felt accommodate, and began to enjoy teaching P.E., and regular education students." (Complaint, ¶11(G)(1)(a)(i-iv)). However, unlike his experience with teaching physical education, plaintiff alleges that due to his "under-qualified science teaching history", physical science was his "least and most undesirable subject". (Complaint, ¶11(G)(1)(b)(i-iv)). He further alleges that he was the "only staff person at Roosevelt H.S." who was not provided with a home room, a working computer, a personal desk, private filing cabinets, mail delivery, and/or working classroom keys. (Complaint, ¶11(G)(1)(d)).

Plaintiff further alleges that he was assigned lunchroom duties; however, he "learned, succeeded at and enjoyed this job employment duty, which most other teachers hated." (Complaint, ¶11(G)(1)(e)).

During the second semester of the 2004-05 school year, plaintiff alleges that "the Defendants removed the Plaintiff from his P.E. and cafeteria duties, which he adapted to and enjoyed" and was re-assigned to teach self-contained special education life, earth, and environmental science courses. (Complaint, ¶11(G)(1)(f)). Plaintiff alleges that "completing the assigned teaching expectations were impossible, not only for the Plaintiff, but any person and/or teacher to accomplish successfully." (Complaint, ¶11(G)(1)(f)(iv)).

Plaintiff claims that defendant SLPS failed to "promote" him because he sought and was not assigned a position as a "disciplinarian" at any of the district's high schools or middle schools. He alleges that he was more qualified than every "disciplinarian" used by Roosevelt High School. (Complaint, ¶11(G)(2)). He further claims that he was subject to a hostile work environment/harassment because he was given "numerous "unwarranted write-ups" from his supervisor (s) "which were all related in time to written correspondences and/or public appearances by the Plaintiff concerning his employment well being.". (Complaint, ¶11(G)(3)(a)).[5]

---

[5]Although difficult to discern, it appears that plaintiff's allegations regarding his claim of failure to accommodate are his litany of complaints about working as a special education resource teacher instead of a "disciplinarian". (Complaint, ¶11(G)(1)(a-g)).

4

Upon consideration of the defendant's motion, the plaintiff's "response", and the relevant caselaw, the Court will grant the defendant's motion to dismiss because plaintiff has failed to state a claim upon which relief can be granted. Based upon his complaint (and even in consideration of his "summary judgment memorandum"), plaintiff cannot establish a *prima facie* case of disability discrimination.

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12111(a). The ADA defines "a qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8). To establish a *prima facie* case of discrimination under the ADA, a plaintiff must establish that (1) s/he is disabled within the meaning of the ADA; (2) s/he is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) s/he has suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination based on disability. Bass v. SBC Communications, 418 F.3d. 870, 873 (8th Cir. 2005); Ristrom v. Asbestos Workers Local 34 Joint Apprentice Committee, 370 F.3d. 763, 768 (8th Cir. 2004); Dropinski v. Douglas County, Nebraska, 298 F.3d. 704, 706 (8th Cir. 2002); Spangler v. Federal Home Loan Bank of Des Moines, 278 F.3d. 847, 850 (8th Cir. 2002); Lowery v. Hazelwood School District, 244 F.3d. 654, 657 (8th Cir. 2001).

The ADA further defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment." 42 U.S.C. §12102(2). The ADA itself does not define the term "major life activities"; however, EEOC regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §1630.2(i)(2001); 45 C.F.R. §84.3(j)(2)(ii)(2001); Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184

(2002)[6]; Conant v. City of Hibbing, 271 F.3d. 782, 784 (8th Cir. 2001); Brunko v. Mercy Hospital, 260 F.3d. 939, 941 (2001). Sitting, standing, lifting, and reaching have also been considered major life activities. *See*, Brunko, at 941; Cooper v. Olin Corp., Winchester Division, 246 F.3d. 1083, 1088 (8th Cir. 2001); Snow v. Ridgeview Medical Center, 128 F.3d. 1201, 1206 n.3 *citing* Helfter v. United Parcel Service, 115 F.3d. 613, 616 (8th Cir. 1997).

Finally, plaintiff must show that the limitation on the major life activity is "substantial". A "substantial limitation" is not a limitation which only interferes in a minor way with a major life activity. Toyota Motors Mfg., 534 U.S. at 195-198. The ADA "addresses substantial limitations on major life activities, not utter inabilities." Moysis v. DTG Datanet, 278 F.3d. 819, 825 (8th Cir. 2002) *quoting* Bragdon v. Abbott, 524 U.S. 624, 641 (1998). An impairment is substantially limiting if an individual is "[s]ignificantly restricted as to the condition, manner, or duration under which . . . the average person in the general population can perform that same major life activity." 29 C.F.R. 1630.2(j)(ii); Moysis, at 825; Conant, at 784; Snow, at 1206. Thus, to be substantially limited in a major life activity, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives . . . [t]he impairment must also be permanent or long-term." Toyota Motors Mfg., 534 U.S. at 198.[7]

---

[6]Although "working" is included in this list since the EEOC regulations generally have been accepted by most courts, including the Eighth Circuit, as providing the definitive list of "major life activities", the United States Supreme Court in Toyota Motors Mfg., *supra.*, recently reiterated the fact that it has not yet definitively held that "working" is a major life activity. Toyota Motors Mfg., 534 U.S. at 200 ("Because of the conceptual difficulties inherent in the argument that working could be a major life activity, we have been hesitant to hold as much, and we need not decide this difficult question today.").

[7]The Toyota Court addressed whether the physical impairment of carpal tunnel syndrome substantially limited the major life activity of performing manual tasks. However, this Court does not consider the Supreme Court's analysis, interpretation, and application of the ADA to be narrowly confined to that particular physical impairment or major life activity. *See*, Spangler, *supra.* (applying Toyota to alleged ADA disability of depression) case; *but also see*, Moysis, *supra.* (distinguishes Toyota as to its non-application in an alleged ADA disability of brain injury case).

The first element that any plaintiff must establish to succeed on a disability discrimination claim under the ADA is that the plaintiff lives with a "disability" as that term is defined under the ADA. If plaintiff Clark cannot establish this element, under any set of facts, then his claim fails. In order to demonstrate that his ADD is a "disability" as that term is defined under the ADA, Clark must allege an impairment that substantially limits a major life activity. Plaintiff has completely failed to allege such an impairment. In fact, his complaint goes to great lengths to demonstrate that he is a competent, hard-working individual who has had extensive "successful" work experience in the education field. He fails to allege that his alleged ADD has "substantially limited" any major life activity as compared to the average person in the general population . *See*, Ristrom, at 769.

Plaintiff's claim regarding failure to accommodate and failure to promote encompass the same assertion; i.e. plaintiff wanted defendant to employ him as a "disciplinarian" at one of its middle schools or high schools. Thus, the only potential major life activity which the plaintiff alleges is impaired is "working". However, plaintiff's own allegations demonstrate that although he may not have liked doing the jobs for which he was hired, he learned to do them, and actually felt he was doing them well. Even if his ADD made these teaching positions more difficult for him, he does not allege that working as a "disciplinarian" would overcome any of the difficulties he associates with having ADD. His complaint clearly shows that he is capable of performing a broad range of jobs despite his "disability". The fact is that plaintiff wants to be hired only as a "disciplinarian" by the defendant. A person's inabilty or personal displeasure at performing "one particular job" is not a substantial limitation on the major life activity of working[8], and that "working does not mean working at a particular job of the person's choice." Knutson, at 1051 *quoting* Maziarka v. Mills Fleet Farm, Inc., 245 F.3d. 675, 679 (8th Cir. 2001) and Miller v City of Springfield, 146 F.3d. 612, 615 (8th Cir. 1998); *see also*, Shape v. Barnes County, North Dakota, 396 F.Supp.2d. 1067, 1079-80 (D.N.D. 2005).

---

[8]The Eighth Circuit has yet to accept "working" as a "major life activity" under the ADA, *see*, Knutson v. A.G. Processing, 394 F.3d. 1047, 1051 (8th Cir. 2005); however, for purposes of this memorandum, this Court will assume that "working" constitutes a "major life activity" under the ADA.

7

Plaintiff alleges that he has ADD and that this "disability" made his tasks as a special education science teacher and as a special education physical education teacher difficult but that he adequately performed. Furthermore, he believed that any short-comings in his teaching was due to the fact that he was "under-qualified". Finally, he fails to allege that being transferred to a "disciplinarian" position will "accommodate" any impairment due to his ADD. He never alleges that he requested a job as a "disciplinarian" as an accommodation for his alleged disability; only that he preferred working as a "disciplinarian" instead of as a special education teacher. Plaintiff fails to state a claim for disability discrimination either as a failure to promote claim or a failure to accommodate claim. Since plaintiff has failed to allege a "disability" as that term is defined under the ADA, defendant's motion to dismiss will be granted as to his disability discrimination claims for failure to promote and failure to accommodate.

As for his disability harassment claim, plaintiff again fails to state a claim for which relief can be granted. To state a hostile work environment claim under the ADA, plaintiff must allege and establish that 1) he is a member of the class of people protected by the ADA; 2) that he was subject to unwelcome harassment; 3) that the harassment resulted from his membership in the protected class; and 4) that the harassment was severe enough to affect the terms, conditions, or privileges of his employment. Shaver v. Independent Stave Co., 350 F.3d. 716, 720 (8th Cir. 2003). Furthermore, "[i]n order to be actionable, harassment must be both subjectively hostile or abusive to the victim and `severe and pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive.'" Id., at 721 *quoting* Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993). Anti-discrimination laws are not codes of civility in the workplace and "[c]onduct that is merely rude, abrasive, unkind or insensitive does not come within the scope of the law." Shaver, at 721.

Plaintiff has failed to state a claim for disability workplace harassment for several reasons. Firstly, as already pointed out, plaintiff has failed to sufficiently allege a "disability" as that term is defined under the ADA; thus, plaintiff has failed to allege membership in a "class of people protected by the statute." Secondly, as to the incidents of harassment, plaintiff alleges that he received various write-ups "related in time to written correspondences **[sic]** and/or public appearances by the Plaintiff

concerning his employment well being", that his requested hearing to review his 2003-04 summative evaluation was never granted, and that his employment schedule was "strategically rearranged" creating "impossible job expectations". *See*, Complaint, ¶11(G)(3). Such incidents hardly rise to the level of being so severe and pervasive as to create an objectively hostile or abusive workplace. Furthermore, plaintiff fails to allege that any of these incidents effected the terms, conditions, and/or privileges of his employment. Finally, plaintiff fails to allege that any of the complained of "harassment" was the result of his ADD. He fails to allege that his ADD was the motivating factor in the treatment he received while employed at Roosevelt High School. He fails to allege a causal connection between the alleged harassment and his "disability".

Plaintiff has failed to allege that his purported ADD was a "disability" as that term is defined under the ADA in that he has failed to allege that his purported ADD substantially limited him in the performance of any major life activity. Furthermore, plaintiff has failed to allege that he was denied a "promotion" or an "accommodation" in the form of employment as a "disciplinarian" because of his purported ADD. Finally, plaintiff has failed to allege that any hostile treatment he was subjected to at Roosevelt High School was due to his purported ADD.

In light of the Court's findings, defendant's motion to dismiss will be granted and plaintiff's complaint will be dismissed in its entirety.

Dated this __25th__ day of January, 2006.

_/s/ Stephen N. Limbaugh_
SENIOR UNITED STATES DISTRICT JUDGE